Denver & R. G. Ry. Co. *v.* Denver, S. P. & P. R. Co.[1]

(*Circuit Court, D. Colorado.* September 18, 1883.)

1 RAILROADS—LOCATION UNDER ACT OF CONGRESS IN MOUNTAIN GORGES.

The location of railroads in mountain gorges, on the public domain, is subject to the second section of the act of congress, approved March 3, 1875, relating to the use of canons, passes, and defiles by railroad companies, which provides that no company which locates its line through such place shall prevent any other company from the use and occupancy of the same canon, pass, or defile for the purpose of its road, in common with the road first located, or the crossing of other railroads at grade.

2. SAME—CONSTRUCTION OF ACT.

This act bears upon its face the meaning that where there is a canon, pass, or defile so narrow as not to admit of the passage of two roads conveniently, it may be used by two or more railroads; but only in cases of necessity can one company go upon the right of way of another for the purpose of building its road.

3. SAME—CROSS-BILL.

The company having prior right of way may enjoin intrusion thereon by another company, until facts are shown making it necessary for the second company to come on the right of way. Suit for injunction being brought, such necessity may be shown, and the right to enter upon and use such right of way may be enforced on cross-bill. The rights of the parties will be settled upon evidence by final decree, and not in a preliminary way upon motion.

In Equity.

*E. O. Wolcott,* for plaintiff.

*H. M. Orahood* and *H. B. Johnson,* for defendant.

HALLETT, J., (*orally.*) The plaintiff in this action located its road and built it under an act of congress approved June 8, 1872.

In *Railway Co.* v. *Alling,* 99 U. S. 463, the supreme court held this act to be subject to the second section of the act of March 3, 1875, relating to the use of canons, passes, and defiles by railroad companies. The act of 1875 provides that no company which shall locate its line through any such place shall prevent any other company from the use and occupancy of the same canon, pass, or defile for the purpose of its road, in common with the road first located, or the crossing of other railroads at grade. This act, although the meaning is not very fully expressed, is evidently understood by the supreme court, and bears upon its face the meaning that where there is a canon, pass, or defile so narrow as not to admit of the passage of two roads conveniently, it may be used by two or more. The supreme court, although they have not discussed the act at very great length, assume that the different companies are not to encroach upon each other's right of way, except there be a necessity for it. They say further:

"Where the Grand canon is broad enough to enable both companies to proceed without interfering with each other in the construction of their respective roads, they should be allowed to do so; but, in the narrow portions of the

[1] From the Colorado Law Reporter.

defile, where this course is impracticable, the court, by proper orders, should recognize the prior right of the Denver & Rio Grande Company to construct its road. Further, if in any portion of the Grand canon it is impracticable or impossible to lay down more than one road-bed and track, the court, while recognizing the prior right of the Denver company to construct and operate that track for its own business, should, by proper orders and upon such terms as may be just and equitable, establish and secure the right of the Canon City Company, conferred by the act of March 3, 1875, to use the same road-bed and track after completion in common with the Denver company."

It is not said in the act of congress that the entire right of way which may be appropriated by one company is subject to be used by another, but only that the first appropriator shall not prevent any other company from the use of the same canon, pass, or defile; and it must be clear from the language used that it is only in cases of necessity that one company can go upon the right of way of another for the purpose of building its road.

Now, whenever a controversy arises between two companies in respect to the existence of such a necessity, the fact that the canon, pass, or defile is such that it is impracticable for the second company to pass through it without going upon the territory of the road first located will enter into the controversy, and it must be settled by the courts. It is perfectly plain that the first company has got a right to object to the intrusion upon its right of way by the second company until that question is settled. If it were true that this act would subject the way to the use of any other company in such a manner that the latter might go in against the objection of the first, it would be also true that the second company could demand of the first the use of its track absolutely without adjudication of the facts in any court; but it seems to me as clear as anything can be that the first company, to locate its road through any such place as is described in this act of congress, may, in the first instance, and without showing any cause whatever, object to admitting any other company into its way until the facts are shown making it necessary for the second company to come on the right of way to build its road. In that view, the circumstance that this suit was brought by the Rio Grande Company against the Denver, South Park & Pacific Company to enjoin it from intruding on its right of way, (the Rio Grande Company having first made its location and constructed its road,) is not material.

As to the right of the defendant to go upon the way of the Rio Grande Company, the controversy is precisely the same as if no such suit had been brought, and upon objection by the Rio Grande Company the other had filed its bill to enforce its right of way under the act of congress; and it is not material that the bill was brought first by the Rio Grande Company to enjoin the other. In any question that arises respecting the right of the defendant to go upon the way of the other company to build its road, the suit is precisely in the same attitude under this cross-bill as if the bill had been first filed by that company as an original bill to enforce and secure to itself the right in these passes

and canons to build its road on the same way with the Rio Grande Company.

The questions that arise in such a bill are various. It may be a question whether the party seeking to enforce such right is to encroach on the right of way of the other the distance of 10 feet or 20 feet, or to lay its road-bed and track immediately parallel with the other, making it substantially a double-track road, or to use the track itself of the other company. It may be a question whether the second track is to be laid above or below the first, immediately contiguous to it, or some distance from it. It must very often be a question whether the second track is to be laid upon the same side of the gulch or defile with the first or upon the opposite side; that is a very material question, for in most of these controversies where the road comes on the opposite side of the defile—upon the opposite wall of the canon— it will not affect the first road in any degree whatever, although it may be upon its right of way; it will not affect the operation or maintenance of the other road in any way whatever; but if the second road is laid above the first, in a place where the snow falls deeply, any one can see that it may affect the first very materially, as in removing the snow from the higher track it must naturally come down upon the other. And so questions that arise in a controversy of this kind, or that may arise, are as difficult of determination and as substantial in their character as any which can be brought into a court of justice. I think they are questions which are subject to adjudication in the ordinary sense. They are questions to be settled by a final decree of court. The matter is to be settled upon evidence, and not in a preliminary way upon motion.

It was suggested by counsel in argument, that it is competent for the court to allow the defendant in this suit to go on constructing this road, subject to such disposition of the matters in issue as may seem to be proper, upon the final hearing and decision of the question upon evidence, or upon whatever may be taken for evidence, but I do not think so. It would be manifestly unjust to the defendant itself to countenance the building of the road now, when it may be that the court will afterwards change its mind in respect to this matter, and require the road to be removed and built somewhere else. What would be said if we should now and here give the defendant permission to go on and build its road as it shall choose, and in six months from this time, on final hearing, declare all of it to be wrong—a mistake from the first,—and that it would be the duty of the defendant to take up its track and put it somewhere else. I do not think that any court can go on in that way. This is a matter for final decision and determination, and as such there are questions which can only be considered upon final hearing.

I do not agree that, after issue has been made in this case, the parties are entitled to the time which is prescribed by rules for taking testimony, because, I think, this case admits of only a certain kind

of testimony, and the court will take the report of commissioners, if we resort to that method of proceeding, as a substitute for testimony ordinarily taken in a cause. It is a method of ascertaining facts which is regarded as more satisfactory, more intelligible, than to call inexperienced persons to testify to matters of which they have no knowledge. The matter in issue between the parties is one which requires the judgment of scientific men; and it is a question which requires the investigation and consideration of such men, and can only be determined by persons, educated as engineers, who go upon the ground and give the necessary attention to the subject.

I think that is about all that it is necessary I should say. What was said by counsel about the hardship that rests upon the defendant may be entirely correct, I suppose it is, but I think it is not a matter for which the court can give relief by preliminary order. The plaintiff in this action has secured this right of way by going upon it and building its road under the act of congress, and I think it has a right to defend that right of way against all who may seek to convert it to their own use, until the condition of things mentioned in this act of congress is shown to exist; and no court has the power to direct any other road to go upon such way until the facts are ascertained. They are to be ascertained according to the usual methods of proceeding in courts of equity. The defendant must wait until the issue is formed upon this cross-bill, and evidence taken. It is competent,—it seems to me now, (I do not wish to prejudge the matter,) —it is competent for the court, after issue joined, to appoint commissioners to go upon the ground and ascertain the facts, and for the court to act upon their report.

If it is sought in the cross-bill to enjoin the Rio Grande Company from doing anything to impede the operations of the defendant in building its road by changing its track, or changing the river, or the like of that, of course that stands upon entirely different grounds. That is in the nature of an application to preserve things in the condition in which they were, until the rights of the parties shall be finally settled; and, if there is any such application as that, after the Rio Grande Company has had a short time to answer the cross-bill, we will hear what you have to say upon it. I understand the amended cross-bill was filed only yesterday. Of course, plaintiff is entitled to defend against it in some form.